IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LATOYA APRIL, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) CASE NO: CIV-13-673-L |
| | ) |
| HUDIBURG NISSAN, LLC, | ) |
| | ) |
|    Defendant. | ) |

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Latoya April, by and through her attorney of record, M. Kathi Rawls of Rawls Law Office, PLLC, and brings this action seeking declaratory and injunctive relief that an Oklahoma Statute is unconstitutional and damages for the Defendant's violations of state and federal law as follows:

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant 28 U.S. C. § 1367 (a).

2. This action arises out of Defendant's violations of the Truth in Lending Act 15 U.S.C. § 1601 et seq., the Equal Credit Opportunity Act 15 U.S. C. 1691 et seq. and various closely related state law claims which arise from a common nucleus of operative fact.

## VENUE

3. Venue is proper in this District because the acts and subject transaction occurred in Oklahoma County, State of Oklahoma.

**4.**     Plaintiff resides here and the Defendant transacts business here and is a domestic Limited Liability Company.

## PARTIES

5.     Plaintiff, Latoya April, is a natural person and was a resident of Oklahoma, Oklahoma County, at all times relevant herein.

6.     Defendant is an Oklahoma Limited Liability Company that is organized pursuant to the laws of the State of Oklahoma.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

7.     Plaintiff Latoya April (hereafter April) purchased a new 2012 Nissan Versa (the Versa) from Defendant Hudiburg Nissan LLC (Hudiburg) on February 23rd, 2013 in exchange for her trade in vehicle, one 2006 PT Cruiser (the PT),  by executing various documents including a Retail Installment Sales Contract (the RISC) and a Motor Vehicle Delivery Agreement (MVDA).

8.     Hudiburg's RISC outlined the terms and interest rate for April's purchase of the Versa.

9.     Hudiburg's MVDA stated that Hudiburg would retain April's trade vehicle in storage until "the sale is complete" and that April had the right to terminate the contract if her contract "had not been funded".

10.     Hudiburg provided possession of the Versa to April on February 23rd, 2013 in exchange for April's PT.

11.     In making its decision to sell the Versa to April, Hudiburg required that April complete a credit application and authorize their review of her credit history, which she did.

12. Other than the credit application, Hudiburg presented each of its' documents for execution by April, with its agent holding each document, covering the page with one hand and gesturing to the exact location for April's signature with the other.

13. At no time during its presentment of loan documents did Hudiburg's agent permit April to actually hold or review any of the documents as each was quickly removed following execution.

14. April understood when she drove home February 23rd, 2013 that she had purchased the Versa from Hudiburg, obligating herself to its insurance and monthly payment. (Exhibit 1, February 23rd Retail Installment Sales Contract)

15. On February 25th, 2013 Hudiburg called April and requested she return to the dealership and sign a second RISC, stating her first loan had been denied.

16. Hudiburg failed to provide any further written explanation to April as to why her credit had been denied.

17. Hudiburg falsely stated that in order to purchase the Versa, April must execute a second RISC, which increased her costs of purchase by more than $4200.

18. Hudiburg sold April's PT on or about February 27th, 2013, prior to its attempted assignment to any third party lender.

19. On or about March 4th, 2013, Capital One called April to verify the details of her purchase from Hudiburg and learned that April had been laid off.

20. On or about March 25th Hudiburg called April a third time insisting that April execute a third RISC or they would repossess the Versa.

21.     April requested that Hudiburg return her PT Cruiser in exchange for the Versa but Hudiburg refused.

22.     On April 1st, 2013, April visited Hudiburg and again requested the return of her PT Cruiser in exchange for the Versa but Hudiburg refused stating her only option was to sign its' 3rd RISC.

23.     Fearful that the Versa would be repossessed by Hudiburg, April sent Hudiburg a payment in the amount of $311.96 pursuant to Hudiburg's first RISC.

24.     Hudiburg cashed the $311. 96 check but wrote April that her payments were $333.61, indicating that it was refusing to honor April's first RISC dated 2/23/13.

25.     April returned the Versa to Hudiburg and demanded rescission and return of her PT Cruiser.

## CAUSES OF ACTION

This is an action for actual, statutory, exemplary damages and penalties that exceed $75,000.00 brought pursuant to the Truth-in-Lending Act, 15 U.S.C. §1601, et. seq. (TILA), Breach of Contract OUJI 23.1, Fraud OUJI 23.33, Deceptive Trade Practices, 15 O.S. 752 (13), Conversion, Equal Credit Opportunity Act (ECOA) violations, 15 U.S.C 1691 § 202.9 and for a declaration that a State statute is unconstitutional pursuant to FRCP 5.1.

## FIRST CAUSE OF ACTION

Injunctive and Declaratory Relief pursuant to FRCP 5.1<br>
that an Oklahoma state statute is unconstitutional<br>
(Plaintiff incorporates ¶¶1-25 as though fully restated)

26. This claim brought pursuant to Federal Rule of Civil Procedure 5.1 to declare Oklahoma statute 47 O.S. § 463 F unconstitutional as a violation of the United States Constitution, Article VI Clause 2, as a violation of the Federal Truth in Lending Act, 15 U.S.C. §1601, et seq., §1610(a)., §1666j.

27. The statute in question authorizes Oklahoma motor vehicle dealers to create so-called "Spot Delivery" documents that authorize certain false statements, including the following, paraphrased:

a. The Retail Installment Sales Contract (RISC) may be terminated if the dealer chooses not to assign it; even though the contract is binding upon both parties at consummation.

b. The dealer is not the creditor; some third party will be the creditor, and then only if the dealer chooses to assign it.

c. If the dealer chooses not to assign the RISC, no consummation occurs.

d. At the time of the consumer signing a RISC, the contract is not yet "funded, " even though a consummated RISC is "funded" by the seller ab initio.

e. The dealer may falsely represent to the consumer that the deal cannot be "completed", and such false statement allows the dealer to self-help repossession of the sold vehicle.

f. Once the dealer repossesses the sold vehicle it may legally charge the consumer the costs of repossession and charge the consumer 35¢ per mile for all miles in excess of 50 miles per day.

28.     The combination of a RISC with the statutory MVDA results in financing terms that are meaningless to the buyer because the terms are revocable at the dealer's sole discretion, thus permitting the preparation of a RISC with financial terms only to induce the buyer to sign the contract, but with no intention to either honor the RISC or to assign the RISC; rather, to call the buyer back after she or he has taken mental ownership of the vehicle then demand more money down, or a higher interest rate, or both, after falsely telling the buyer that "the bank rejected your credit."

29.      This scenario is bait and switch.  It is theft if the buyer signs a second RISC and obligates herself to pay the demanded credit increase.  The Oklahoma "spot delivery" statute allows bait and switch which is a criminal act.

30.     Further, the statute violates TILA because it allows dealers to claim that they are not creditors; that third party banks, finance companies, and credit unions are the creditors in the transaction, but only if assigned.  If not assigned there is no creditor, thus violating 15 U.S.C. §1638(a).

a. TILA and Regulation Z at 15 U.S.C. §1638(a), 12 C.F.R. §226.17(a), and 12 C .F.R. §226.18 (and other sections) make the dealer (the seller who prepared the RISC for the buyer's signature) the only creditor in these credit transactions.

b. TILA and Regulation Z at 15 U.S.C. §1641 and 12 C.F.R. 226.2(a)(17) differentiate creditors from assignees. The Official Staff Commentary on Regulation Z at §226.2(a)(17) gives the following example:

2. Assignees. If an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person.  For example:

• An auto dealer and a bank have a business relationship in which the bank supplies the dealer with credit sale contracts that are initially made payable to the dealer and provide for the immediate assignment of the obligation to the bank.  The dealer and purchaser execute the contract only after the bank approves the creditworthiness of the purchaser.  Because the obligation is initially payable on its face to the dealer, the dealer is the only creditor in the transaction.

31. Plaintiff seeks a declaration that Oklahoma statute 47 O.S. . § 463 F is unconstitutional as entirely inconsistent with the Truth in Lending Act, which is the supreme law of the land under Article VI, Clause 2 of the United States Constitution.

SECOND CAUSE OF ACTION
Violation of the Truth in Lending Act
(Plaintiff incorporates ¶¶1-31 as though fully restated)

32. The Truth in Lending Act's (hereafter TILA ) purpose is to assure meaningful disclosures of credit terms so that consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit. 15 U.S.C. §1601(a).

33. At all times material hereto plaintiff was a consumer, Hudiburg was a creditor, the credit extended was consumer credit, and the transaction was a credit sale, each as defined in 15 U.S.C. §1602 and 12 C.F.R. §226.2.

34. TILA mandates that consummation (contract completion) occurs at the time the buyer signs a RISC.  12 C.F.R. §226.2(a)(13).

35. Pursuant to 47 O.S. 563 F, the New Motor Vehicle Commission permits the practice informally known in Oklahoma's automobile industry as "Spot Delivery", which violates TILA.

36.     Hudiburg extended credit to April, pursuant its consummated February 23rd RISC but defrauded April by purporting to render the RISC disclosures inaccurate and a nullity with its use of the so-called "Motor Vehicle Delivery Agreement" (Exhibit 2, Motor Vehicle Delivery Agreement).

37.     Hudiburg's violation of TILA entitles April to her reasonable attorney fees and a penalty of up to $1000 pursuant to 15 U.S.C. §1640(a)(3).

THIRD CAUSE OF ACTION
Breach of Contract
(Plaintiff incorporates ¶¶1-37 as though fully restated)

38.     April and Hudiburg agreed to the purchase of the Versa for a specific dollar amount on February 23rd, 2013.(See Exhibit 1, First RISC).

39.     Hudiburg falsely stated to April that the "deal had fallen through" when in essence it meant that they intended to breach its agreement to purchase.

40.     As a result of its breach of contract, April is entitled to the actual and consequential damages which resulted plus her reasonable attorney fees.

FOURTH CAUSE OF ACTION
Equal Credit Opportunity Act-failure to provide written denial notice
15 U.S.C 1691 et seq.
(Plaintiff incorporates ¶¶1-37 as though fully restated)

41.      Hudiburg regularly participates in the decision of whether and to whom it will extend credit. 15 U.S.C. 1691 (a) (e)

42.     Hudiburg verbally informed April on February 25th that her application for credit had been denied requiring her to sign a new RISC.

43. Hudiburg failed to provide April written notification of the basis of its denial within the mandated 30 day period pursuant to the ECOA. 15 U.S.C sec. 202.9 (a) (i).

44. April is entitled to a penalty from Hudiburg of up to $1000 and her reasonable attorney fee.

**FIFTH CAUSE OF ACTION**
Conversion
(Plaintiff incorporates ¶¶1-44 as though fully restated)

45. April traded Hudiburg the ownership of the PT pursuant to Hudiburg's RISC.

46. When it became apparent that Hudiburg no longer intended to honor that agreement, April was entitled to the return of her trade vehicle.

47. Hudiburg refused to return April's PT and sold it instead.

48. April has been without an automobile since the return of the Versa to Hudiburg.

49. As a result April is entitled to the retail value of the PT as actual damages and the cost of rentals as consequential damages.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT**
*15 O.S. 750 (13) et seq.*
(Plaintiff incorporates ¶¶1-49 as though fully restated)

50. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral; 15 O.S. 752 (13).

51. Hudiburg committed a deceptive trade practice by fraudulently informing April that her credit had been denied after it approved the sale of the Versa to April on February 23rd.

52. Hudiburg committed another deceptive trade practice when it informed April on February 25th that she was required to purchase an Extended Warranty in order to qualify for financing from Capital One.

53. Hudiburg committed another deceptive trade practice when it falsely informed April that unless she signed a third RISC that the Versa would be repossessed.

54. As a result of its deceptive trade practices, April is entitled to her attorney fees and a penalty of $2000 for each and every instance of a deceptive trade practice, as a penalty.

WHEREFORE, premises stated, Plaintiffs prays for injunctive and declaratory relief, consequential damages, statutory damages, both state and federal, punitive damages, attorney fees and costs of this action and all other relief the Court deems just and proper.

/s/ M. Kathi Rawls
M. Kathi Rawls, OBA #18814
Rawls Law Office, PLLC
2404 S. Broadway St.
Moore, OK 73160
405-912-3225
Fax: 405-703-2769
ATTORNEY FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**